IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CORRIGENT CORPORATION | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. |
| | ) | |
| DELL TECHNOLOGIES INC. AND DELL INC. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Corrigent Corporation ("Corrigent" or "Plaintiff"), by its attorneys, demands a trial by jury on all issues so triable and for its complaint against Defendants Dell Technologies Inc. and Dell Inc. (collectively, "Dell" or "Defendants"), and alleges as follows:

## NATURE OF THE ACTION

1.      This is a civil action for patent infringement under the patent laws of the United States, Title 35, United States Code, Section 271, *et seq.*, involving the following United States Patents, collectively, "Asserted Patents," and seeking damages and injunctive relief as provided in 35 U.S.C. §§ 281 and 283–285.

| |
|---|
| U.S. Patent No. 6,957,369 (Exhibit 1, "'369 patent") |
| U.S. Patent No. 7,113,485 (Exhibit 2, "'485 patent") |
| U.S. Patent No. 7,330,431 (Exhibit 3, "'431 patent") |
| U.S. Patent No. 7,593,400 (Exhibit 4, "'400 patent") |

## THE PARTIES

2.      Plaintiff is a Delaware Corporation.  Plaintiff may be served with process through its registered agent for service at Harvard Business Services, Inc., 16192 Coastal Hwy., Lewes, Delaware 19958.  Plaintiff is the owner by assignment of the Asserted Patents.

3.      Defendant Dell Technologies Inc. is a corporation organized and existing under the

laws of the State of Delaware, with its principal place of business at One Dell Way, Round Rock, Texas 78682. Dell Technologies Inc. may be served through its registered agent, Corporation Service Company, at 251 Little Falls Drive, Wilmington, Delaware 19808.

4.     Defendant Dell Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at One Dell Way, Round Rock, Texas 78682. Dell Technologies Inc. may be served through its registered agent, Corporation Service Company, at 251 Little Falls Drive, Wilmington, Delaware 19808.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.     On information and belief, jurisdiction and venue for this action are proper in this Judicial District.

7.     This Court has personal jurisdiction over Defendants because they (i) are incorporated in the State of Delaware and this Judicial District; (ii) have purposefully availed themselves of the rights and benefits of the laws of the State of Delaware and this Judicial District; (iii) have done and are doing substantial business in the State of Delaware and this Judicial District, directly or through intermediaries, both generally and, on information and belief, with respect to the allegations in this Complaint, including their one or more acts of infringement in the State of Delaware and this Judicial District; (iv) maintain continuous and systematic contacts in the State of Delaware and this Judicial District; (v) and/or place products alleged to be infringing in this Complaint in the stream of commerce with awareness that those products are sold and offered for sale in the State of Delaware and this Judicial District. Defendants have established sufficient minimum contacts with the State of Delaware and this Judicial District such that they should

reasonably and fairly anticipate being brought into court in the State of Delaware and this Judicial District without offending traditional notions of fair play and substantial justice; and Defendants have purposefully directed activities at residents of the State of Delaware and this Judicial District. Moreover, at least a portion of the patent infringement claims alleged herein arise out of or are related to one or more of the foregoing activities.  On information and belief, a substantial part of the events giving rise to Plaintiff's claims, including acts of patent infringement, have occurred in the State of Delaware and this Judicial District.

8.     Venue is proper in this Judicial District as to Defendants under 28 U.S.C. § 1400(b) at least because they are incorporated in the State of Delaware and this Judicial District and reside in the State of Delaware and this Judicial District.

## JOINDER

9.     Joinder is proper under at least Federal Rule of Civil Procedure 20 and 35 U.S.C. § 299 at least because Defendants' infringing conduct alleged herein arises out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process, and questions of fact common to all Defendants will arise in this action.

## CORRIGENT-SYSTEMS AND ITS
## PIONEERING TELECOMMUNICATIONS TECHNOLOGY

10.     Corrigent-Systems Ltd. (a.k.a. Orckit Communications Ltd.) ("Corrigent-Systems" or "Orckit") was founded in 1990 by Izhak Tamir, and went public and was listed on the Nasdaq Stock Exchange in 1996.

11.     Corrigent-Systems was a pioneer in the telecommunications field, with sales of its telecommunications products exceeding $500M to various global telecommunications providers such as Deutche Telekom (Germany) and Kokusai Denshin Denwa International ("KDDI")

(Japan). Between 1990 and 2000, Corrigent-Systems became the market leader in asymmetric digital subscriber line (ADSL) technology.

12.    In 2000, Corrigent-Systems started to develop new telecommunications products in the area of Ethernet switching and routing to optimize the transmission of voice and data over Internet Protocol (IP) telecommunications networks. At the time, the field of Ethernet switching and routing suffered many drawbacks. Early Ethernet technology used for sharing data in offices and enterprises was not easily suited to serve as the backbone for telecommunications service providers. For example, early Ethernet technology, used to connect a few computers in an office, could not meet the reliability and resiliency requirements of service providers, where a single connection may serve thousands of subscribers using different services in parallel. Nor could early Ethernet technology support real-time streaming, guarantee a minimum or even consistent delay, avoid back-up delay if a failure in the network occurs (e.g., a cable is damaged), or support the broadcasting of high-data-rate data to multiple end points required by, for example, television service providers.

13.    Corrigent-Systems was a pioneer in overcoming these technology challenges. Between 2000 and 2010, Corrigent-Systems invested approximately $200M toward research and development of its new Ethernet switching and routing products. Corrigent-Systems identified and solved several obstacles in the field, and, as a result, was awarded hundreds of patents including the Asserted Patents, spanning over 70 patent families. Corrigent-Systems' product line revolutionized the telecommunications industry. For example, KDDI in Japan deployed a country-wide network of more than 2,000 Corrigent-Systems Ethernet switch products as early as 2005, a time when Corrigent-Systems' competitors lagged significantly behind Corrigent-Systems and its innovative products and solutions.

14.     The industry recognized Corrigent-Systems' innovation.  In a research study by Bart Stuck & Michael Weingarten published in IEEE, Corrigent-Systems was ranked in the top twenty innovative companies among hundreds of public companies.  Stuck, B. and Weingarten, M., "How Venture Capital Thwarts Innovation," IEEE Spectrum (April 2005).

15.     Plaintiff Corrigent Corporation obtained all rights in the asserted patents.

## THE ASSERTED PATENTS

### U.S. Patent No. 6,957,369

16.     Plaintiff is the lawful owner of all right, title, and interest in U.S. Patent No. 6,957,369 ("'369 patent") entitled "HIDDEN FAILURE DETECTION," including the right to sue and recover for infringement thereof.  A copy of the '369 patent is attached hereto as Exhibit 1, which was duly and legally issued on October 18, 2005, naming Leon Bruckman and Shmuel Ilan as the inventors.

17.     The '369 patent has 26 claims: 4 independent claims and 22 dependent claims.

18.     The '369 patent presented novel and unconventional systems and methods for "diagnostic testing of electronic equipment, and specifically to non-intrusive self-testing of communication systems." Ex. 1, '369 patent at 1:5–7; *id*. at Abstract.  The inventions of the '369 patent, for example, "enable[] an electronic system to test its idle lines and components and detect hidden failures without intruding on normal traffic carried by the system's active lines." *Id*. at 2:26–29.  "The testing method makes use of existing components in the system and requires substantially no dedicated testing hardware.  It is applicable to all types of subsidiary modules, even in systems that mix different modules using different data formats and communication protocols." *Id*. at 31–28.  One embodiment of the inventions of the '369 patent is shown in FIG. 1, reproduced below.



*Id.* at Fig. 1; *see also id.* at 4:54–5:54.

19.    The claims of the '369 patent, including claim 15 (reproduced below), recite at least these inventive concepts of the '369 patent.

15. Modular electronic apparatus, comprising:

a backplane, which comprises traces for carrying data between modules that are plugged into the backplane;

a main module, plugged into the backplane, the main module comprising a switch having ports for connection to the traces of the backplane;

at least first and second subsidiary modules, plugged into the backplane so as to be connected to the main module by the traces, at least some of which traces are sometimes idle; and

a system control processor, which is operative to select a first idle trace among idle traces connecting the first subsidiary module to a first port of the switch on the main module to serve as an aid trace, to instruct the first subsidiary module to loop back traffic reaching the first subsidiary module via the aid trace, to select for testing a second idle trace among the idle traces connecting the second subsidiary module to a second port of the switch on the main module, and to configure the switch to link the first and second ports, the system control processor being further operative to cause test traffic to be transmitted over the second idle trace from the second

subsidiary module to the main module, wherein the test traffic is conveyed via the switch to the aid trace connecting to the first subsidiary module, and to report that a failure has occurred if the test traffic does not return to the second subsidiary module within a predetermined period of time.

*Id*. at claim 15.

20.    The subject matter described and claimed in the '369 patent, including the subject matter of claim 15, was an improvement in computer and communications functionality, performance, and efficiency, and was novel and not well-understood, routine, or conventional at the time of the '369 patent.

**U.S. Patent No. 7,113,485**

21.    Plaintiff is the lawful owner of all right, title, and interest in U.S. Patent No. 7,113,485 ("'485 patent") entitled "LATENCY EVALUATION IN A RING NETWORK," including the right to sue and recover for infringement thereof.   A copy of the '485 patent is attached as Exhibit 2, which was duly and legally issued on September 26, 2006, naming Leon Bruckman as the inventor.

22.    The '485 patent has 20 claims: 6 independent claims and 14 dependent claims.

23.    The '485 patent presented novel and unconventional systems and methods "for measuring network latency, particularly in ring topologies."  Ex. 2, '485 patent at 2:59–61; *id*. at 1:6–10, Abstract.   The inventions of the '485 patent, for example, "provide simple, accurate methods for measuring round-trip latency between pairs of nodes in a network."  *Id*. at 2:65–67. One embodiment of the inventions of the '485 patent is shown in FIG. 1, reproduced below.



*Id.* at Fig. 1; *see also id.* at 6:22–40.

24.     The claims of the '485 patent, including claim 16 (reproduced below), recite at least these inventive concepts of the '485 patent.

> 16. Apparatus for measuring latency in a network in which traffic is transmitted in a plurality of classes of service, the apparatus comprising a node in the network, which generates a latency measurement packet containing an indication that the packet belongs to a selected one of the classes of service and to transmit the latency measurement packet, so that the packet is passed through the network at a level of service accorded to the class, the node notes a time of receipt of the latency measurement packet at a destination in the network and to calculate the latency for the selected one of the classes of service by taking a difference between a time of transmission of the latency measurement packet and the time of receipt thereof.

*Id.* at claim 16.

25.     The subject matter described and claimed in the '485 patent, including the subject matter of claim 16, was an improvement in computer and communications functionality, performance, and efficiency, and was novel and not well-understood, routine, or conventional at the time of the '485 patent.

**U.S. Patent No. 7,330,431**

26.     Plaintiff is the lawful owner of all right, title, and interest in U.S. Patent No. 7,330,431 ("'431 patent") entitled "MULTIPOINT TO MULTIPOINT COMMUNICATION OVER RING TOPOLOGIES," including the right to sue and recover for infringement thereof.  A copy of the '431 patent is attached as Exhibit 3, which was duly and legally issued on February 12, 2008, naming Leon Bruckman as the inventor.

27.     The '431 patent has 30 claims: 5 independent claims and 25 dependent claims.

28.     The '431 patent presented novel and unconventional systems and methods concerning communications within a network, and specifically for "optimizing bandwidth allocation for the data in the network."  Ex. 3, '431 patent at 1:7–9; *id*. at Abstract ("A method for assigning bandwidth in a network including nodes coupled by links arranged in a physical topology . . . .").  In embodiments of the '431 patent, actual bandwidths of links in a physical network are assigned according to the logical connectivity of notes in services carried by the network.  *Id*. at 2:11–35.  The inventions of the '431 patent, for example, provide "a simple and effective way to allocate bandwidth correctly and efficiently, particularly guaranteed bandwidth."  *Id*. at 2:31–35.  One embodiment of the inventions of the '431 patent is shown in FIG. 1, reproduced below.



*Id*. at Fig. 3; *see also id*. at 7:63–10:8.

29.     The claims of the '431 patent, including claim 25, recite at least these inventive

concepts of the '431 patent.

> 25. Apparatus for assigning bandwidth in a network including nodes coupled by links arranged in a physical topology, the apparatus comprising:
>
> a controller which is adapted to:
>
> receive a definition of logical connections between the nodes, the logical connections being associated with a data transmission service to be provided over the network, the logical connections having a connection topology different from the physical topology,
>
> determine respective bandwidth requirements for the logical connections based on parameters of the service,
>
> map the connection topology to the physical topology, so that each of the logical connections is associated with one or more links of the physical topology, and
>
> allocate a bandwidth for the service on each of the links in response to the bandwidth requirements of the logical connections and to the mapping.

*Id*. at claim 25.

30.     The subject matter described and claimed in the '431 patent, including the subject

matter of claim 25, was an improvement in computer and communications functionality,

performance, and efficiency, and was novel and not well-understood, routine, or conventional at

the time of the '431 patent.

**U.S. Patent No. 7,593,400**

31.     Plaintiff is the lawful owner of all right, title, and interest in U.S. Patent No.

7,593,400 ("'400 patent") entitled "MAC ADDRESS LEARNING IN A DISTRIBUTED

BRIDGE," including the right to sue and recover for infringement thereof.  A copy of the '400

patent is attached as Exhibit 4, which was duly and legally issued on September 22, 2009, naming

David Zelig, Leon Bruckman, Ronen Solomon, Zeev Oster, David Rozenberg, and Uzi Khill as

the inventors.

32.    The '400 patent has 20 claims: 2 independent claims and 18 dependent claims.

33.    The '400 patent presented novel and unconventional systems and methods "for bridging in virtual private LAN services (VPLS) and other distributed bridging systems."  Ex. 4, '400 patent at 1:6–9.  The inventions of the '400 patent, for example, provide "improved methods for MAC learning and network nodes that implement such methods," which "are useful especially in the context of nodes that are configured to serve as virtual bridges in Layer 2 virtual private networks, as well as in distributed bridge nodes of other types, particularly when multiple ports of the node are conjoined in a LAG group," and may be applied in different situations to, for example, "to facilitate MAC learning in any distributed MAC learning environment."  *Id.* at 2:60–3:2.  One embodiment of the inventions of the '400 patent is shown in FIG. 3, "a flow chart that schematically illustrates a method for MAC learning," reproduced below.



*Id.* at Fig. 3; *see also id.* at 7:55–10:48.

34.    The claims of the '400 patent, including claim 1 (reproduced below), recite at least these inventive concepts of the '400 patent.

1. A method for communication, comprising:

configuring a network node having a plurality of ports, and at least first and second line cards with respective first and second ports, to operate as a distributed media access control (MAC) bridge in a Layer 2 data network;

configuring a link aggregation (LAG) group of parallel physical links between two endpoints in said Layer 2 data network joined together into a single logical link, said LAG group having a plurality of LAG ports and a plurality of conjoined member line cards;

providing for each of said member line cards a respective forwarding database (FDB) to hold records associating MAC addresses with ports of said plurality of ports of said network node;

receiving a data packet on an ingress port of said network node from a MAC source address, said data packet specifying a MAC destination address on said Layer 2 data network;

conveying, by transmitting said data packet to said MAC destination address via said first port, said received data packet in said network node to at least said first line card for transmission to said MAC destination address;

if said MAC destination address does not appear in said FDB, flooding said data packet via one and only one LAG port of said plurality of LAG ports;

checking said MAC source address of the data packet against records in said FDB of said first line card; and

if said FDB of said first line card does not contain a record of an association of said MAC source address with said ingress port, creating a new record of said association, adding said new record to the FDB of said first line card, and sending a message of the association to each member line card of said plurality of member line cards.

*Id.* at claim 1.

35.    The subject matter described and claimed in the '400 patent, including the subject matter of claim 1, was an improvement in computer and communications functionality, performance, and efficiency, and was novel and not well-understood, routine, or conventional at the time of the '400 patent.

## **BACKGROUND OF DEFENDANTS' INFRINGING CONDUCT**

36.     Defendants are computer and networking companies that make, use, sell, and/or offer for sale in the United States, and/or import into the United States, or have otherwise made, used, sold, offered for sale in the United States, and/or imported in the United States, routers and switches that infringe the Asserted Patents.

37.     Defendants' products that infringe the Asserted Patents (collectively, "Accused Products") include the following:

| Accused Products | Asserted Patents |
|---|---|
| Dell EMC Networking N4000 Series Switches | '485 patent |
| Dell PowerEdge MX7000 | '369 patent and '400 patent |
| Dell S-Series PowerSwitches | '431 patent |

The above-listed Accused Products are non-limiting.   Additional products may infringe the Asserted Patents, and the above-listed Accused Products may infringe additional patents or other Asserted Patents.

38.     Defendants infringe and continue to infringe the Asserted Patents by making, using, selling, offering to sell, and/or importing, without license or authority, the Accused Products as alleged herein.

39.     Comparison of claims of the Asserted Patents to the Accused Products are attached as Exhibit 5 ('369 patent), Exhibit 6 ('485 patent), Exhibit 7 ('431 patent), and Exhibit 8 ('400 patent) and incorporated herein by reference.   Defendants market, advertise, offer for sale, and/or otherwise promote the Accused Products and, on information and belief, do so to induce, encourage, instruct, and aid one or more persons in the United States to make, use, sell, and/or offer to sell their Accused Products.   For example, Defendants advertise, offer for sale, and/or otherwise promote the Accused Products on their website.   Defendants further publish and

distribute data sheets, manuals, and guides for the Accused Products. *See, e.g.*, Ex. 9, excerpt of "Dell EMC Networking N-Series N1100-ON, N1500, N2000, N2100-ON, N3000, N3100-ON, and N4000 Switches User's Configuration Guide" (publicly available at https://downloads.dell.com/manuals/common/networking_nxxug_en-us.pdf); Ex. 10, excerpt of "Dell EMC SmartFabric OS10 User Guide, Release 10.5.3" (publicly available at https://dl.dell.com/topicspdf/dell-emc-smartfabric-os10_users-guide15_en-us.pdf); Ex. 11, excerpt of "Dell EMC PowerEdge MX Networking Deployment Guide" (publicly available at https://infohub.delltechnologies.com/t/dell-emc-poweredge-mx-networking-deployment-guide/); Ex. 12, "PowerEdge MX I/O Guide, I/O Connectivity Options for the PowerEdge MX Platform" (publicly available at https://www.dell.com/en-us/dt/networking/modular-system-switches/index.htm#pdf-overlay=//www.delltechnologies.com/asset/en-us/products/networking/briefs-summaries/PowerEdge_MX_IO_Guide.pdf). Therein, Defendants describe and tout the use of the subject matter claimed in the Asserted Patents, as described and alleged below.

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 6,957,369

40.    Plaintiff incorporates by reference the allegations contained in paragraphs 1–39.

41.    Defendants have made, used, offered for sale, sold, and/or imported products, including at least the Accused Products, that infringe, either literally or under the doctrine of equivalents, one or more claims of the '369 patent in violation of 35 U.S.C. § 271(a), including claim 15. A comparison of claim 15 of the '369 patent to the Accused Products is attached as Exhibit 5, which is incorporated herein by reference.

42.    On information and belief, with knowledge of the '369 patent at least as of the filing of this Complaint, Defendants have actively induced and continue to induce the direct infringement of one or more claims of the '369 patent, including claim 15, in violation of 35 U.S.C. § 271(b) by

their customers and/or end users of their products, including at least the Accused Products, by selling, providing support for, providing instructions for use of, and/or otherwise encouraging its customers and/or end-users to directly infringe, either literally and/or under the doctrine of equivalents, one or more claims of the '369 patent, including claim 15, with the intent to encourage those customers and/or end-users to infringe the '369 patent.

43.    By way of example, on information and belief, Defendants actively induce infringement of the '369 patent by encouraging, instructing, and aiding one or more persons in the United States, including but not limited to customers and end users who purchase, test, operate, and use Defendants' products, including at least the Accused Products, to make, use, sell, and/or offer to sell Defendants' products, including at least the Accused Products, in a manner that infringes at least one claim of the '369 patent, including claim 15.  For example, as described above, Defendants actively market, advertise, offer for sale, and/or otherwise promote the Accused Products on their website.  Defendants further actively market, advertise, offer for sale, and/or otherwise promote its Accused Products by publishing and distributing data sheets, manuals, and guides for the Accused Products.  Therein, Defendants describe and tout the use of the subject matter claimed in the '369 patent.

44.    On information and belief, with knowledge of the '369 patent at least as of the filing of this Complaint, Defendants also contribute to the infringement of one or more claims of the '369 patent in violation of 35 U.S.C. § 271(c), including claim 15, by making, using, offering to sell or selling and/or importing a patented component or material constituting a material part of the invention, including at least the Accused Products, knowing the same to be especially made or especially adapted for use in an infringement and not a staple article or commodity of commerce suitable for substantial non-infringing use.  This is evidenced by, among other things, the design,

configuration, and functionality of Defendants' Accused Products, which are especially made or especially adapted for use in an infringement of the '369 patent when used for their normal and intended purpose.  This is also evidenced by, among other things, Defendants' informational and promotional materials described above, which describe the normal use and intended purpose of the Accused Products and demonstrate that the Accused Products are especially made or especially adapted for a use that infringes the '369 patent.

45.    As a result of Defendants' inducement of, and/or contribution to, infringement, their customers and/or end users made, used, sold, or offered for sale, and continue to make, use, sell, or offer to sell Defendants' products, including the Accused Products, in ways that directly infringe one or more claims of the '369 patent, including claim 15.  On information and belief, Defendants had actual knowledge of their customers' and/or end users' direct infringement at least by virtue of their sales, instruction, and/or otherwise promotion of Defendants' products, including the Accused Products, at least as of the filing of this Complaint.

46.    On information and belief, Defendants will continue to infringe the '369 patent unless and until they are enjoined by this Court.  Defendants, by way of their infringing activities, have caused and continue to cause Plaintiff to suffer damages in an amount to be determined, and has caused and is causing Plaintiff irreparable harm.  Plaintiff has no adequate remedy at law against Defendants' acts of infringement and, unless they are enjoined from their infringement of the '369 patent, Plaintiff will continue to suffer irreparable harm.

47.    Plaintiff is entitled to recover from Defendants damages at least in an amount adequate to compensate for their infringement of the '369 patent, which amount has yet to be determined, together with interest and costs fixed by the Court.

48.    Plaintiff has complied with 35 U.S.C. § 287 with respect to the '369 patent.

## COUNT II – INFRINGEMENT OF U.S. PATENT NO. 7,113,485

49.    Plaintiff incorporates by reference the allegations contained in paragraphs 1–48.

50.    Defendants have made, used, offered for sale, sold, and/or imported products, including at least the Accused Products, that infringe, either literally or under the doctrine of equivalents, one or more claims of the '485 patent in violation of 35 U.S.C. § 271(a), including claim 16.  A comparison of claim 16 of the '485 patent to the Accused Products is attached as Exhibit 6, which is incorporated herein by reference.

51.    On information and belief, with knowledge of the '485 patent at least as of the filing of this Complaint, Defendants have actively induced and continue to induce the direct infringement of one or more claims of the '485 patent, including claim 16, in violation of 35 U.S.C. § 271(b) by their customers and/or end users of their products, including at least the Accused Products, by selling, providing support for, providing instructions for use of, and/or otherwise encouraging its customers and/or end-users to directly infringe, either literally and/or under the doctrine of equivalents, one or more claims of the '485 patent, including claim 16, with the intent to encourage those customers and/or end-users to infringe the '485 patent.

52.    By way of example, on information and belief, Defendants actively induce infringement of the '485 patent by encouraging, instructing, and aiding one or more persons in the United States, including but not limited to customers and end users who purchase, test, operate, and use Defendants' products, including at least the Accused Products, to make, use, sell, and/or offer to sell Defendants' products, including at least the Accused Products, in a manner that infringes at least one claim of the '485 patent, including claim 16.  For example, as described above, Defendants actively market, advertise, offer for sale, and/or otherwise promote the Accused Products on their website.  Defendants further actively market, advertise, offer for sale, and/or otherwise promote its Accused Products by publishing and distributing data sheets, manuals, and

guides for the Accused Products. Therein, Defendants describe and tout the use of the subject matter claimed in the '485 patent.

53.    On information and belief, with knowledge of the '485 patent at least as of the filing of this Complaint, Defendants also contribute to the infringement of one or more claims of the '485 patent in violation of 35 U.S.C. § 271(c), including claim 16, by making, using, offering to sell or selling and/or importing a patented component or material constituting a material part of the invention, including at least the Accused Products, knowing the same to be especially made or especially adapted for use in an infringement and not a staple article or commodity of commerce suitable for substantial non-infringing use. This is evidenced by, among other things, the design, configuration, and functionality of Defendants' Accused Products, which are especially made or especially adapted for use in an infringement of the '485 patent when used for their normal and intended purpose. This is also evidenced by, among other things, Defendants' informational and promotional materials described above, which describe the normal use and intended purpose of the Accused Products and demonstrate that the Accused Products are especially made or especially adapted for a use that infringes the '485 patent.

54.    As a result of Defendants' inducement of, and/or contribution to, infringement, their customers and/or end users made, used, sold, or offered for sale, and continue to make, use, sell, or offer to sell Defendants' products, including the Accused Products, in ways that directly infringe one or more claims of the '485 patent, including claim 16. On information and belief, Defendants had actual knowledge of their customers' and/or end users' direct infringement at least by virtue of their sales, instruction, and/or otherwise promotion of Defendants' products, including the Accused Products, at least as of the filing of this Complaint.

55.    On information and belief, Defendants will continue to infringe the '485 patent

unless and until they are enjoined by this Court. Defendants, by way of their infringing activities, have caused and continue to cause Plaintiff to suffer damages in an amount to be determined, and has caused and is causing Plaintiff irreparable harm. Plaintiff has no adequate remedy at law against Defendants' acts of infringement and, unless they are enjoined from their infringement of the '485 patent, Plaintiff will continue to suffer irreparable harm.

56.    Plaintiff is entitled to recover from Defendants damages at least in an amount adequate to compensate for their infringement of the '485 patent, which amount has yet to be determined, together with interest and costs fixed by the Court.

57.    Plaintiff has complied with 35 U.S.C. § 287 with respect to the '485 patent.

## COUNT III – INFRINGEMENT OF U.S. PATENT NO. 7,330,431

58.    Plaintiff incorporates by reference the allegations contained in paragraphs 1–57.

59.    Defendants have made, used, offered for sale, sold, and/or imported products, including at least the Accused Products, that infringe, either literally or under the doctrine of equivalents, one or more claims of the '431 patent in violation of 35 U.S.C. § 271(a), including claim 25. A comparison of claim 25 of the '431 patent to the Accused Products is attached as Exhibit 7, which is incorporated herein by reference.

60.    On information and belief, with knowledge of the '431 patent at least as of the filing of this Complaint, Defendants have actively induced and continue to induce the direct infringement of one or more claims of the '431 patent, including claim 25, in violation of 35 U.S.C. § 271(b) by their customers and/or end users of their products, including at least the Accused Products, by selling, providing support for, providing instructions for use of, and/or otherwise encouraging its customers and/or end-users to directly infringe, either literally and/or under the doctrine of equivalents, one or more claims of the '431 patent, including claim 25, with the intent to encourage those customers and/or end-users to infringe the '431 patent.

61.     By way of example, on information and belief, Defendants actively induce infringement of the '431 patent by encouraging, instructing, and aiding one or more persons in the United States, including but not limited to customers and end users who purchase, test, operate, and use Defendants' products, including at least the Accused Products, to make, use, sell, and/or offer to sell Defendants' products, including at least the Accused Products, in a manner that infringes at least one claim of the '431 patent, including claim 25.  For example, as described above, Defendants actively market, advertise, offer for sale, and/or otherwise promote the Accused Products on their website.  Defendants further actively market, advertise, offer for sale, and/or otherwise promote its Accused Products by publishing and distributing data sheets, manuals, and guides for the Accused Products.  Therein, Defendants describe and tout the use of the subject matter claimed in the '431 patent.

62.     On information and belief, with knowledge of the '431 patent at least as of the filing of this Complaint, Defendants also contribute to the infringement of one or more claims of the '431 patent in violation of 35 U.S.C. § 271(c), including claim 25, by making, using, offering to sell or selling and/or importing a patented component or material constituting a material part of the invention, including at least the Accused Products, knowing the same to be especially made or especially adapted for use in an infringement and not a staple article or commodity of commerce suitable for substantial non-infringing use.  This is evidenced by, among other things, the design, configuration, and functionality of Defendants' Accused Products, which are especially made or especially adapted for use in an infringement of the '431 patent when used for their normal and intended purpose.  This is also evidenced by, among other things, Defendants' informational and promotional materials described above, which describe the normal use and intended purpose of the Accused Products and demonstrate that the Accused Products are especially made or especially

adapted for a use that infringes the '431 patent.

63.    As a result of Defendants' inducement of, and/or contribution to, infringement, their customers and/or end users made, used, sold, or offered for sale, and continue to make, use, sell, or offer to sell Defendants' products, including the Accused Products, in ways that directly infringe one or more claims of the '431 patent, including claim 25.  On information and belief, Defendants had actual knowledge of their customers' and/or end users' direct infringement at least by virtue of their sales, instruction, and/or otherwise promotion of Defendants' products, including the Accused Products, at least as of the filing of this Complaint.

64.    On information and belief, Defendants will continue to infringe the '431 patent unless and until they are enjoined by this Court.  Defendants, by way of their infringing activities, have caused and continue to cause Plaintiff to suffer damages in an amount to be determined, and has caused and is causing Plaintiff irreparable harm.  Plaintiff has no adequate remedy at law against Defendants' acts of infringement and, unless they are enjoined from their infringement of the '431 patent, Plaintiff will continue to suffer irreparable harm.

65.    Plaintiff is entitled to recover from Defendants damages at least in an amount adequate to compensate for their infringement of the '431 patent, which amount has yet to be determined, together with interest and costs fixed by the Court.

66.    Plaintiff has complied with 35 U.S.C. § 287 with respect to the '431 patent.

### COUNT IV – INFRINGEMENT OF U.S. PATENT NO. 7,593,400

67.    Plaintiff incorporates by reference the allegations contained in paragraphs 1–66.

68.    Defendants have made, used, offered for sale, sold, and/or imported products, including at least the Accused Products, that infringe, either literally or under the doctrine of equivalents, one or more claims of the '400 patent in violation of 35 U.S.C. § 271(a), including claim 1.  A comparison of claim 1 of the '400 patent to the Accused Products is attached as Exhibit

8, which is incorporated herein by reference.

69.    On information and belief, with knowledge of the '400 patent at least as of the filing of this Complaint, Defendants have actively induced and continue to induce the direct infringement of one or more claims of the '400 patent, including claim 1, in violation of 35 U.S.C. § 271(b) by their customers and/or end users of their products, including at least the Accused Products, by selling, providing support for, providing instructions for use of, and/or otherwise encouraging its customers and/or end-users to directly infringe, either literally and/or under the doctrine of equivalents, one or more claims of the '400 patent, including claim 1, with the intent to encourage those customers and/or end-users to infringe the '400 patent.

70.    By way of example, on information and belief, Defendants actively induce infringement of the '400 patent by encouraging, instructing, and aiding one or more persons in the United States, including but not limited to customers and end users who purchase, test, operate, and use Defendants' products, including at least the Accused Products, to make, use, sell, and/or offer to sell Defendants' products, including at least the Accused Products, in a manner that infringes at least one claim of the '400 patent, including claim 1.  For example, as described above, Defendants actively market, advertise, offer for sale, and/or otherwise promote the Accused Products on their website.  Defendants further actively market, advertise, offer for sale, and/or otherwise promote its Accused Products by publishing and distributing data sheets, manuals, and guides for the Accused Products.  Therein, Defendants describe and tout the use of the subject matter claimed in the '400 patent.

71.    On information and belief, with knowledge of the '400 patent at least as of the filing of this Complaint, Defendants also contribute to the infringement of one or more claims of the '400 patent in violation of 35 U.S.C. § 271(c), including claim 1, by making, using, offering to sell

or selling and/or importing a patented component or material constituting a material part of the invention, including at least the Accused Products, knowing the same to be especially made or especially adapted for use in an infringement and not a staple article or commodity of commerce suitable for substantial non-infringing use. This is evidenced by, among other things, the design, configuration, and functionality of Defendants' Accused Products, which are especially made or especially adapted for use in an infringement of the '400 patent when used for their normal and intended purpose. This is also evidenced by, among other things, Defendants' informational and promotional materials described above, which describe the normal use and intended purpose of the Accused Products and demonstrate that the Accused Products are especially made or especially adapted for a use that infringes the '400 patent.

72.    As a result of Defendants' inducement of, and/or contribution to, infringement, their customers and/or end users made, used, sold, or offered for sale, and continue to make, use, sell, or offer to sell Defendants' products, including the Accused Products, in ways that directly infringe one or more claims of the '400 patent, including claim 1. On information and belief, Defendants had actual knowledge of their customers' and/or end users' direct infringement at least by virtue of their sales, instruction, and/or otherwise promotion of Defendants' products, including the Accused Products, at least as of the filing of this Complaint.

73.    On information and belief, Defendants will continue to infringe the '400 patent unless and until they are enjoined by this Court. Defendants, by way of their infringing activities, have caused and continue to cause Plaintiff to suffer damages in an amount to be determined, and has caused and is causing Plaintiff irreparable harm. Plaintiff has no adequate remedy at law against Defendants' acts of infringement and, unless they are enjoined from their infringement of the '400 patent, Plaintiff will continue to suffer irreparable harm.

74.     Plaintiff is entitled to recover from Defendants damages at least in an amount adequate to compensate for their infringement of the '400 patent, which amount has yet to be determined, together with interest and costs fixed by the Court.

75.     Plaintiff has complied with 35 U.S.C. § 287 with respect to the '400 patent.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues triable as such.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Corrigent Corporation requests that the Court enter judgment for Plaintiff and against Defendants Dell Technologies Inc. and Dell Inc. and enter the following relief:

A.     A judgment that Defendants infringe the following, Asserted Patents:

| |
|---|
| U.S. Patent No. 6,957,369 (Exhibit 1, "'369 patent") |
| U.S. Patent No. 7,113,485 (Exhibit 2, "'485 patent") |
| U.S. Patent No. 7,330,431 (Exhibit 3, "'431 patent") |
| U.S. Patent No. 7,593,400 (Exhibit 4, "'400 patent") |

B.     A permanent injunction restraining and enjoining Defendants, their officers, partners, agents, servants, employees, parents, subsidiaries, divisions, affiliate corporations, joint ventures, other related business entities and all other persons acting in concert, participation, or in privity with them, and their successors and assigns, from infringing the Asserted Patents;

C.     An award of damages to Plaintiff arising from Defendants' past and continuing infringement up until the date Defendants are finally and permanently enjoined from further infringement, including compensatory damages;

D.    A determination that this is an exceptional case and awarding Plaintiff's attorneys' fees pursuant to 35 U.S.C. § 285;

E.    An order awarding Plaintiff costs and expenses in this action;

F.    An order awarding Plaintiff pre- and post-judgment interest on its damages; and

G.    An award to Plaintiff of such further relief at law or in equity as the Court deems just and proper.

ASHBY & GEDDES

*/s/ Andrew C. Mayo*

_____
John G. Day (#2403)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
jday@ashbygeddes.com
amayo@ashbygeddes.com

*Of Counsel:*

James R. Nuttall
Robert F. Kappers
STEPTOE & JOHNSON LLP
227 West Monroe Street, Suite 4700
Chicago, IL 60606
(312) 577-1300

Thomas C. Yebernetsky                    *Attorneys for Plaintiff Corrigent Corporation*
Nigel C. Ray
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-8003

Dated: April 19, 2022