IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CORRIGENT CORPORATION AND NAHUM COMMUNICATION N.T.B LTD. <br><br> Plaintiffs, <br><br> v. <br><br> DELL TECHNOLOGIES INC. AND DELL INC. <br><br> Defendants. | ) ) ) ) ) ) ) ) ) |

C.A. No. 1:22-cv-00496-RGA

**JURY TRIAL DEMANDED**

## FIRST AMENDED COMPLAINT

Plaintiffs Corrigent Corporation ("Corrigent") and Nahum Communication N.T.B Ltd. ("Nahum") (collectively, "Plaintiffs"), by their attorneys, demand a trial by jury on all issues so triable and for its complaint against Defendants Dell Technologies Inc. and Dell Inc. (collectively, "Dell" or "Defendants"), and allege as follows:

## NATURE OF THE ACTION

1.      This is a civil action for patent infringement under the patent laws of the United States, Title 35, United States Code, Section 271, *et seq.*, involving the following United States Patents, collectively, "Asserted Patents," and seeking damages and injunctive relief as provided in 35 U.S.C. §§ 281 and 283–285.

| |
|---|
| U.S. Patent No. 6,957,369 (Exhibit 1, "'369 patent") |
| U.S. Patent No. 7,593,400 (Exhibit 2, "'400 patent") |

## THE PARTIES

2.      Plaintiff Corrigent is a Delaware Corporation.  Plaintiff Corrigent may be served with process through its registered agent for service at Harvard Business Services, Inc., 16192 Coastal Hwy., Lewes, Delaware 19958.  Plaintiff Corrigent is the owner by assignment of the Asserted Patents.

3.      Plaintiff Nahum is a private company organized and existing under the laws of Israel, with its principal place of business at 41 Yosef Tzvi St, Ramat Gan, Israel.  Plaintiff Nahum assigned Plaintiff Corrigent the Asserted Patents.

4.      Defendant Dell Technologies Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at One Dell Way, Round Rock, Texas 78682.  Dell Technologies Inc. may be served through its registered agent, Corporation Service Company, at 251 Little Falls Drive, Wilmington, Delaware 19808.

5.      Defendant Dell Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at One Dell Way, Round Rock, Texas 78682. Dell Technologies Inc. may be served through its registered agent, Corporation Service Company, at 251 Little Falls Drive, Wilmington, Delaware 19808.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7.      On information and belief, jurisdiction and venue for this action are proper in this Judicial District.

8.      This Court has personal jurisdiction over Defendants because they (i) are incorporated in the State of Delaware and this Judicial District; (ii) have purposefully availed themselves of the rights and benefits of the laws of the State of Delaware and this Judicial District; (iii) have done and are doing substantial business in the State of Delaware and this Judicial District, directly or through intermediaries, both generally and, on information and belief, with respect to the allegations in this First Amended Complaint, including their one or more acts of infringement in the State of Delaware and this Judicial District; (iv) maintain continuous and systematic contacts

in the State of Delaware and this Judicial District; (v) and/or place products alleged to be infringing in this First Amended Complaint in the stream of commerce with awareness that those products are sold and offered for sale in the State of Delaware and this Judicial District. Defendants have established sufficient minimum contacts with the State of Delaware and this Judicial District such that they should reasonably and fairly anticipate being brought into court in the State of Delaware and this Judicial District without offending traditional notions of fair play and substantial justice; and Defendants have purposefully directed activities at residents of the State of Delaware and this Judicial District. Moreover, at least a portion of the patent infringement claims alleged herein arise out of or are related to one or more of the foregoing activities. On information and belief, a substantial part of the events giving rise to Plaintiffs' claims, including acts of patent infringement, have occurred in the State of Delaware and this Judicial District.

9. Venue is proper in this Judicial District as to Defendants under 28 U.S.C. § 1400(b) at least because they are incorporated in the State of Delaware and this Judicial District and reside in the State of Delaware and this Judicial District.

## JOINDER

10. Joinder is proper under at least Federal Rule of Civil Procedure 20 and 35 U.S.C. § 299 at least because (i) Defendants stipulated to the joinder of Plaintiff Corrigent and Plaintiff Nahum, and Plaintiffs seek relief jointly and with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences and there are common questions of law and fact common to Plaintiffs that will arise in the action; and (ii) Defendants' infringing conduct alleged herein arises out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process, and questions of fact common to all Defendants will arise in this action.

## CORRIGENT-SYSTEMS AND ITS
## PIONEERING TELECOMMUNICATIONS TECHNOLOGY

11.     Corrigent-Systems Ltd. (a.k.a. Orckit Communications Ltd.) ("Corrigent-Systems" or "Orckit") was founded in 1990 by Izhak Tamir, and went public and was listed on the Nasdaq Stock Exchange in 1996.

12.     Corrigent-Systems was a pioneer in the telecommunications field, with sales of its telecommunications products exceeding $500M to various global telecommunications providers such as Deutche Telekom (Germany) and Kokusai Denshin Denwa International ("KDDI") (Japan).  Between 1990 and 2000, Corrigent-Systems became the market leader in asymmetric digital subscriber line (ADSL) technology.

13.     In 2000, Corrigent-Systems started to develop new telecommunications products in the area of Ethernet switching and routing to optimize the transmission of voice and data over Internet Protocol (IP) telecommunications networks.  At the time, the field of Ethernet switching and routing suffered many drawbacks.  Early Ethernet technology used for sharing data in offices and enterprises was not easily suited to serve as the backbone for telecommunications service providers.  For example, early Ethernet technology, used to connect a few computers in an office, could not meet the reliability and resiliency requirements of service providers, where a single connection may serve thousands of subscribers using different services in parallel.  Nor could early Ethernet technology support real-time streaming, guarantee a minimum or even consistent delay, avoid back-up delay if a failure in the network occurs (e.g., a cable is damaged), or support the broadcasting of high-data-rate data to multiple end points required by, for example, television service providers.

14.     Corrigent-Systems was a pioneer in overcoming these technology challenges. Between 2000 and 2010, Corrigent-Systems invested approximately $200M toward research and

development of its new Ethernet switching and routing products. Corrigent-Systems identified and solved several obstacles in the field, and, as a result, was awarded hundreds of patents including the Asserted Patents, spanning over 70 patent families. Corrigent-Systems' product line revolutionized the telecommunications industry. For example, KDDI in Japan deployed a country-wide network of more than 2,000 Corrigent-Systems Ethernet switch products as early as 2005, a time when Corrigent-Systems' competitors lagged significantly behind Corrigent-Systems and its innovative products and solutions.

15. The industry recognized Corrigent-Systems' innovation. In a research study by Bart Stuck & Michael Weingarten published in IEEE, Corrigent-Systems was ranked in the top twenty innovative companies among hundreds of public companies. Stuck, B. and Weingarten, M., "How Venture Capital Thwarts Innovation," IEEE Spectrum (April 2005).

16. Plaintiff Corrigent Corporation obtained all rights in the asserted patents from Plaintiff Nahum.

## THE ASSERTED PATENTS

### U.S. Patent No. 6,957,369

17. Plaintiff Corrigent is the lawful owner of all right, title, and interest in U.S. Patent No. 6,957,369 ("'369 patent") entitled "HIDDEN FAILURE DETECTION," including the right to sue and recover for infringement thereof. A copy of the '369 patent is attached hereto as Exhibit 1, which was duly and legally issued on October 18, 2005, naming Leon Bruckman and Shmuel Ilan as the inventors.

18. The '369 patent has 26 claims: 4 independent claims and 22 dependent claims.

19. The '369 patent presented novel and unconventional systems and methods for "diagnostic testing of electronic equipment, and specifically to non-intrusive self-testing of

communication systems." Ex. 1, '369 patent at 1:5–7; *id.* at Abstract. The inventions of the '369

patent, for example, "enable[] an electronic system to test its idle lines and components and detect

hidden failures without intruding on normal traffic carried by the system's active lines." *Id.* at

2:26–29. "The testing method makes use of existing components in the system and requires

substantially no dedicated testing hardware. It is applicable to all types of subsidiary modules,

even in systems that mix different modules using different data formats and communication

protocols." *Id.* at 31–28. One embodiment of the inventions of the '369 patent is shown in FIG.

1, reproduced below.



*Id.* at Fig. 1; *see also id.* at 4:54–5:54.

20. The claims of the '369 patent, including claim 15 (reproduced below), recite at least

these inventive concepts of the '369 patent.

15. Modular electronic apparatus, comprising:

a backplane, which comprises traces for carrying data between modules that are plugged into the backplane;

a main module, plugged into the backplane, the main module comprising a switch having ports for connection to the traces of the backplane;

at least first and second subsidiary modules, plugged into the backplane so as to be connected to the main module by the traces, at least some of which traces are sometimes idle; and

a system control processor, which is operative to select a first idle trace among idle traces connecting the first subsidiary module to a first port of the switch on the main module to serve as an aid trace, to instruct the first subsidiary module to loop back traffic reaching the first subsidiary module via the aid trace, to select for testing a second idle trace among the idle traces connecting the second subsidiary module to a second port of the switch on the main module, and to configure the switch to link the first and second ports, the system control processor being further operative to cause test traffic to be transmitted over the second idle trace from the second subsidiary module to the main module, wherein the test traffic is conveyed via the switch to the aid trace connecting to the first subsidiary module, and to report that a failure has occurred if the test traffic does not return to the second subsidiary module within a predetermined period of time.

*Id*. at claim 15.

21.    The subject matter described and claimed in the '369 patent, including the subject matter of claim 15, was an improvement in computer and communications functionality, performance, and efficiency, and was novel and not well-understood, routine, or conventional at the time of the '369 patent.

**U.S. Patent No. 7,593,400**

22.    Plaintiff Corrigent is the lawful owner of all right, title, and interest in U.S. Patent No. 7,593,400 ("'400 patent") entitled "MAC ADDRESS LEARNING IN A DISTRIBUTED BRIDGE," including the right to sue and recover for infringement thereof.  A copy of the '400 patent is attached as Exhibit 2, which was duly and legally issued on September 22, 2009, naming David Zelig, Leon Bruckman, Ronen Solomon, Zeev Oster, David Rozenberg, and Uzi Khill as the inventors.

23.    The '400 patent has 20 claims: 2 independent claims and 18 dependent claims.

24.    The '400 patent presented novel and unconventional systems and methods "for

bridging in virtual private LAN services (VPLS) and other distributed bridging systems." Ex. 4, '400 patent at 1:6–9. The inventions of the '400 patent, for example, provide "improved methods for MAC learning and network nodes that implement such methods," which "are useful especially in the context of nodes that are configured to serve as virtual bridges in Layer 2 virtual private networks, as well as in distributed bridge nodes of other types, particularly when multiple ports of the node are conjoined in a LAG group," and may be applied in different situations to, for example, "to facilitate MAC learning in any distributed MAC learning environment." *Id.* at 2:60–3:2. One embodiment of the inventions of the '400 patent is shown in FIG. 3, "a flow chart that schematically illustrates a method for MAC learning," reproduced below.



*Id.* at Fig. 3; *see also id.* at 7:55–10:48.

25.     The claims of the '400 patent, including claim 1 (reproduced below), recite at least these inventive concepts of the '400 patent.

1. A method for communication, comprising:

configuring a network node having a plurality of ports, and at least first and second line cards with respective first and second ports, to operate as a distributed media access control (MAC) bridge in a Layer 2 data network;

configuring a link aggregation (LAG) group of parallel physical links between two endpoints in said Layer 2 data network joined together into a single logical link, said LAG group having a plurality of LAG ports and a plurality of conjoined member line cards;

providing for each of said member line cards a respective forwarding database (FDB) to hold records associating MAC addresses with ports of said plurality of ports of said network node;

receiving a data packet on an ingress port of said network node from a MAC source address, said data packet specifying a MAC destination address on said Layer 2 data network;

conveying, by transmitting said data packet to said MAC destination address via said first port, said received data packet in said network node to at least said first line card for transmission to said MAC destination address;

if said MAC destination address does not appear in said FDB, flooding said data packet via one and only one LAG port of said plurality of LAG ports;

checking said MAC source address of the data packet against records in said FDB of said first line card; and

if said FDB of said first line card does not contain a record of an association of said MAC source address with said ingress port, creating a new record of said association, adding said new record to the FDB of said first line card, and sending a message of the association to each member line card of said plurality of member line cards.

*Id*. at claim 1.

26.     The subject matter described and claimed in the '400 patent, including the subject matter of claim 1, was an improvement in computer and communications functionality, performance, and efficiency, and was novel and not well-understood, routine, or conventional at the time of the '400 patent.

## BACKGROUND OF DEFENDANTS' INFRINGING CONDUCT

27.     Defendants are computer and networking companies that make, use, sell, and/or

offer for sale in the United States, and/or import into the United States, or have otherwise made, used, sold, offered for sale in the United States, and/or imported in the United States, routers and switches that infringe the Asserted Patents.

28.     Defendants' products that infringe the Asserted Patents (collectively, "Accused Products") include the following:

| Accused Products | Asserted Patents |
|---|---|
| Dell PowerEdge MX7000 | '369 patent and '400 patent |

The above-listed Accused Products are non-limiting.  Additional products may infringe the Asserted Patents, and the above-listed Accused Products may infringe additional patents or other Asserted Patents.

29.     Defendants infringe and continue to infringe the Asserted Patents by making, using, selling, offering to sell, and/or importing, without license or authority, the Accused Products as alleged herein.

30.     Comparison of claims of the Asserted Patents to the Accused Products are attached as Exhibit 3 ('369 patent) and Exhibit 4 ('400 patent) and incorporated herein by reference. Defendants market, advertise, offer for sale, and/or otherwise promote the Accused Products and, on information and belief, do so to induce, encourage, instruct, and aid one or more persons in the United States to make, use, sell, and/or offer to sell their Accused Products.  For example, Defendants advertise, offer for sale, and/or otherwise promote the Accused Products on their website.  Defendants further publish and distribute data sheets, manuals, and guides for the Accused Products.  *See, e.g.*, Ex. 5, excerpt of "Dell EMC PowerEdge MX Networking Deployment Guide" (publicly available at https://infohub.delltechnologies.com/t/dell-emc-poweredge-mx-networking-deployment-guide/); Ex. 6, "PowerEdge MX I/O Guide, I/O Connectivity Options for the PowerEdge MX Platform" (publicly available at

https://www.dell.com/en-us/dt/networking/modular-system-switches/index.htm#pdf-overlay=//www.delltechnologies.com/asset/en-us/products/networking/briefs-summaries/PowerEdge_MX_IO_Guide.pdf).  Therein, Defendants describe and tout the use of the subject matter claimed in the Asserted Patents, as described and alleged below.

<u>**COUNT I – INFRINGEMENT OF U.S. PATENT NO. 6,957,369**</u>

31.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1–30.

32.    Defendants have made, used, offered for sale, sold, and/or imported products, including at least the Accused Products, that infringe, either literally or under the doctrine of equivalents, one or more claims of the '369 patent in violation of 35 U.S.C. § 271(a), including claim 15.  A comparison of claim 15 of the '369 patent to the Accused Products is attached as Exhibit 3, which is incorporated herein by reference.

33.    On information and belief, for the period of time after the filing of the Complaint (D.I. 1) on April 19, 2022, with knowledge of the '369 patent at least as of the filing of the Complaint (D.I. 1) on April 19, 2022, Defendants have actively induced and continue to induce the direct infringement of one or more claims of the '369 patent, including claim 15, in violation of 35 U.S.C. § 271(b) by their customers and/or end users of their products, including at least the Accused Products, by selling, providing support for, providing instructions for use of, and/or otherwise encouraging its customers and/or end-users to directly infringe, either literally and/or under the doctrine of equivalents, one or more claims of the '369 patent, including claim 15, with the intent to encourage those customers and/or end-users to infringe the '369 patent.

34.    By way of example, on information and belief, Defendants actively induce infringement of the '369 patent by encouraging, instructing, and aiding one or more persons in the United States, including but not limited to customers and end users who purchase, test, operate, and use Defendants' products, including at least the Accused Products, to make, use, sell, and/or

offer to sell Defendants' products, including at least the Accused Products, in a manner that infringes at least one claim of the '369 patent, including claim 15. For example, as described above, Defendants actively market, advertise, offer for sale, and/or otherwise promote the Accused Products on their website. Defendants further actively market, advertise, offer for sale, and/or otherwise promote its Accused Products by publishing and distributing data sheets, manuals, and guides for the Accused Products. Therein, Defendants describe and tout the use of the subject matter claimed in the '369 patent.

35. On information and belief, for the period of time after the filing of the Complaint (D.I. 1) on April 19, 2022, with knowledge of the '369 patent at least as of the filing of the Complaint (D.I. 1) on April 19, 2022, Defendants also contribute to the infringement of one or more claims of the '369 patent in violation of 35 U.S.C. § 271(c), including claim 15, by making, using, offering to sell or selling and/or importing a patented component or material constituting a material part of the invention, including at least the Accused Products, knowing the same to be especially made or especially adapted for use in an infringement and not a staple article or commodity of commerce suitable for substantial non-infringing use. This is evidenced by, among other things, the design, configuration, and functionality of Defendants' Accused Products, which are especially made or especially adapted for use in an infringement of the '369 patent when used for their normal and intended purpose. This is also evidenced by, among other things, Defendants' informational and promotional materials described above, which describe the normal use and intended purpose of the Accused Products and demonstrate that the Accused Products are especially made or especially adapted for a use that infringes the '369 patent.

36. As a result of Defendants' inducement of, and/or contribution to, infringement, their customers and/or end users made, used, sold, or offered for sale, and continue to make, use,

sell, or offer to sell Defendants' products, including the Accused Products, in ways that directly infringe one or more claims of the '369 patent, including claim 15. On information and belief, Defendants had actual knowledge of their customers' and/or end users' direct infringement at least by virtue of their sales, instruction, and/or otherwise promotion of Defendants' products, including the Accused Products, at least as of the filing of the Complaint (D.I. 1) on April 19, 2022.

37.     On information and belief, Defendants will continue to infringe the '369 patent unless and until they are enjoined by this Court. Defendants, by way of their infringing activities, have caused and continue to cause Plaintiffs to suffer damages in an amount to be determined, and has caused and is causing Plaintiffs irreparable harm. Plaintiffs have no adequate remedy at law against Defendants' acts of infringement and, unless they are enjoined from their infringement of the '369 patent, Plaintiffs will continue to suffer irreparable harm.

38.     Plaintiffs are entitled to recover from Defendants damages at least in an amount adequate to compensate for their infringement of the '369 patent, which amount has yet to be determined, together with interest and costs fixed by the Court.

39.     Plaintiffs have complied with 35 U.S.C. § 287 with respect to the '369 patent.

## COUNT II – INFRINGEMENT OF U.S. PATENT NO. 7,593,400

40.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1–39.

41.     Defendants have made, used, offered for sale, sold, and/or imported products, including at least the Accused Products, that infringe, either literally or under the doctrine of equivalents, one or more claims of the '400 patent in violation of 35 U.S.C. § 271(a), including claim 1. A comparison of claim 1 of the '400 patent to the Accused Products is attached as Exhibit 4, which is incorporated herein by reference.

42.     On information and belief, for the period of time after the filing of the Complaint (D.I. 1) on April 19, 2022, with knowledge of the '400 patent at least as of the filing of the

Complaint (D.I. 1) on April 19, 2022, Defendants have actively induced and continue to induce the direct infringement of one or more claims of the '400 patent, including claim 1, in violation of 35 U.S.C. § 271(b) by their customers and/or end users of their products, including at least the Accused Products, by selling, providing support for, providing instructions for use of, and/or otherwise encouraging its customers and/or end-users to directly infringe, either literally and/or under the doctrine of equivalents, one or more claims of the '400 patent, including claim 1, with the intent to encourage those customers and/or end-users to infringe the '400 patent.

43.     By way of example, on information and belief, Defendants actively induce infringement of the '400 patent by encouraging, instructing, and aiding one or more persons in the United States, including but not limited to customers and end users who purchase, test, operate, and use Defendants' products, including at least the Accused Products, to make, use, sell, and/or offer to sell Defendants' products, including at least the Accused Products, in a manner that infringes at least one claim of the '400 patent, including claim 1.  For example, as described above, Defendants actively market, advertise, offer for sale, and/or otherwise promote the Accused Products on their website.  Defendants further actively market, advertise, offer for sale, and/or otherwise promote its Accused Products by publishing and distributing data sheets, manuals, and guides for the Accused Products.  Therein, Defendants describe and tout the use of the subject matter claimed in the '400 patent.

44.     On information and belief, for the period of time after the filing of the Complaint (D.I. 1) on April 19, 2022, with knowledge of the '400 patent at least as of the filing of the Complaint (D.I. 1) on April 19, 2022, Defendants also contribute to the infringement of one or more claims of the '400 patent in violation of 35 U.S.C. § 271(c), including claim 1, by making, using, offering to sell or selling and/or importing a patented component or material constituting a

material part of the invention, including at least the Accused Products, knowing the same to be especially made or especially adapted for use in an infringement and not a staple article or commodity of commerce suitable for substantial non-infringing use. This is evidenced by, among other things, the design, configuration, and functionality of Defendants' Accused Products, which are especially made or especially adapted for use in an infringement of the '400 patent when used for their normal and intended purpose. This is also evidenced by, among other things, Defendants' informational and promotional materials described above, which describe the normal use and intended purpose of the Accused Products and demonstrate that the Accused Products are especially made or especially adapted for a use that infringes the '400 patent.

45. As a result of Defendants' inducement of, and/or contribution to, infringement, their customers and/or end users made, used, sold, or offered for sale, and continue to make, use, sell, or offer to sell Defendants' products, including the Accused Products, in ways that directly infringe one or more claims of the '400 patent, including claim 1. On information and belief, Defendants had actual knowledge of their customers' and/or end users' direct infringement at least by virtue of their sales, instruction, and/or otherwise promotion of Defendants' products, including the Accused Products, at least as of the filing of the Complaint (D.I. 1) on April 19, 2022.

46. On information and belief, Defendants will continue to infringe the '400 patent unless and until they are enjoined by this Court. Defendants, by way of their infringing activities, have caused and continue to cause Plaintiffs to suffer damages in an amount to be determined, and has caused and is causing Plaintiffs irreparable harm. Plaintiffs have no adequate remedy at law against Defendants' acts of infringement and, unless they are enjoined from their infringement of the '400 patent, Plaintiffs will continue to suffer irreparable harm.

47. Plaintiffs are entitled to recover from Defendants damages at least in an amount

adequate to compensate for their infringement of the '400 patent, which amount has yet to be determined, together with interest and costs fixed by the Court.

48.     Plaintiffs have complied with 35 U.S.C. § 287 with respect to the '400 patent.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues triable as such.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Corrigent Corporation and Nahum Communication N.T.B Ltd. request that the Court enter judgment for Plaintiffs and against Defendants Dell Technologies Inc. and Dell Inc. and enter the following relief:

A.     A judgment that Defendants infringe the following, Asserted Patents:

| U.S. Patent No. 6,957,369 (Exhibit 1, "'369 patent") |
| --- |
| U.S. Patent No. 7,593,400 (Exhibit 2, "'400 patent") |

B.     A permanent injunction restraining and enjoining Defendants, their officers, partners, agents, servants, employees, parents, subsidiaries, divisions, affiliate corporations, joint ventures, other related business entities and all other persons acting in concert, participation, or in privity with them, and their successors and assigns, from infringing the Asserted Patents;

C.     An award of damages to Plaintiffs arising from Defendants' past and continuing infringement up until the date Defendants are finally and permanently enjoined from further infringement, including compensatory damages;

D.     A determination that this is an exceptional case and awarding Plaintiffs' attorneys' fees pursuant to 35 U.S.C. § 285;

E.     An order awarding Plaintiffs costs and expenses in this action;

F.     An order awarding Plaintiffs pre- and post-judgment interest on its damages; and

G.     An award to Plaintiffs of such further relief at law or in equity as the Court deems just and proper.

ASHBY & GEDDES

*/s/ Andrew C. Mayo*

_____

John G. Day (#2403)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
jday@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Plaintiffs Corrigent Corporation and Nahum Communication N.T.B Ltd.*

*Of Counsel:*

James R. Nuttall
Robert F. Kappers
Daniel F. Gelwicks
Candice J. Kwark
STEPTOE LLP
227 West Monroe Street, Suite 4700
Chicago, IL 60606
(312) 577-1300
jnuttall@steptoe.com
rkappers@steptoe.com
dgelwicks@steptoe.com
ckwark@steptoe.com

Michael C. Miller
STEPTOE LLP
1114 Avenue of the Americas
New York, NY 10036
(212) 506-3955
mmiller@steptoe.com

Christopher A. Suarez
STEPTOE LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-8003
csuarez@steptoe.com

Dated: August 16, 2024